May it please the court, my name is David Merchant. I'm an assistant federal defender from the Federal Defenders of Montana, and I represent Cameron Smith. I would ask to reserve two minutes. Cameron Smith went to trial in this case after having already told the authorities what he had done. He went to trial to argue about the amount of weight. That seems very clear from the record. I was not trial counsel, nor was I the first counsel I heard on this case. But with that said, the three major issues that we presented to the court, the lack of acceptance of responsibility, the gun enhancement, and the safety valve, seem very intertwined. And if you think in terms of those, Mr. Smith went to trial because he didn't agree that he had distributed more than 500 grams of cocaine. He went to trial, and it seems clear from the record, partially because his attorney took him to trial. That is not an issue here. It's usually not ripe for argument at this stage of the case. But it has to be something that this court thinks about. It's something that I thought about from the very beginning that I was appointed to this case. This is a young man who never heard of the safety valve until I'm talking to him about that after he had been convicted. But if he possessed the firearm, he would not be eligible for the safety valve, correct? No, Your Honor. I don't believe that is correct. I believe that there is two different standards. The gun enhancement has a different standard than the safety valve enhancement. The safety valve, first and foremost, the defendant has the burden of proving his initial eligibility. I'm sorry. I need to go back to that. I thought the statute said that safety valve relief is available only if the defendant did not possess a firearm in connection with committing the offense of conviction. Is that true or not true? I believe that's not true. The 5C1.2 requires that the defendant must prove only by a preponderance of the evidence that the firearm is not connected to the offense. The gun enhancement requires that he show it's clearly improbable. I understand it's a different standard, but I guess the basic question is let's assume it's proved beyond a reasonable doubt that he had a firearm in connection with the offense. He's not eligible for the safety valve, right? That would be true, yes. So depending on the standard of proof, if the government or whoever meets or fails to meet the standard of proof, that could be dispositive of the safety valve issue as well. I believe that would be true, but that's not what the court found. The court found he wasn't eligible for the safety valve because he wasn't truthful, although we don't know why the court deemed that. The gun, though, factually I think is very important because the case law is overwhelmingly against us as far as where a gun is located, where there is drugs or a drug operation going on. It is absolutely true that Cameron Smith had drugs in that house. He had cocaine in the kitchen, and there was marijuana plants in one bedroom that wasn't a bedroom. It was marijuana plants, and then there was a water bong with marijuana residue on a coffee table in front of the television. The gun was located in his bedroom. The gun was located in the dresser drawer, and the dresser drawer was thought to be like a junk drawer. And Cameron Smith was very clear. When the police came, he told them there was a gun in that drawer. He told them that he thought it was broken. He told them he had received it approximately 10 years before. He gave the name of the person. There was no ammunition found whatsoever in that house. He did tell them that the gun he believed to be broken, and later the ATF test fired it, and it was proved to be operable. But there was not a single person who said they ever saw the gun, so the gun was not there. Well, there was some inferential testimony from the person who worked for the apartment complex that he saw something that could have either been a gun or a remote control, right? Well, kind of. Judge Rawlinson, what happens is the day before the search warrant is executed, the manager goes to the apartment. He opens the door. He takes a step in. He sees the couch, and he sees something black on the couch at the cushions. But didn't he say it could have been a remote or the butt of a gun? Yes, absolutely. So the jury could have believed if there were two alternative explanations, and the jury believed one versus the other, why isn't that dispositive? Well, because that was the information he gave on the search warrant. At trial, he did not say the same thing. At trial, he actually said that I couldn't tell if it was a remote control. I'm looking at page 87 of the excerpts. I couldn't tell if it was a remote handle for the TV or a pistol. You know a semi-automatic pistol handling sticking out of the cushion. We do know that the next day that firearm was found in the dresser drawer. So we have to make the assumption that the gun is there, and then for some reason, Mr. Smith, then moved the gun. We don't know. There was no testing done of the gun. There was no further investigation of this gun. But it's a couch, Your Honor. It's a couch across from a television in a small two-bedroom apartment. With all due respect, it's more likely than not that it's a television remote control. Well, no, not necessarily. I mean, the judge is entitled to make the determination from looking at the witnesses. He sat through the whole trial, heard the witnesses, determined who was credible. And once the trial judge makes that determination, we generally don't second-guess that. But the trial judge, in this case, didn't really make that determination. The record is not clear. What happens is the trial judge says, I'm giving you the gun because the gun is in the house or the apartment. I'm giving you the gun in hand because it's in the apartment. I thought the judge said at the sentencing hearing that there was a gun. Yeah, he absolutely did. He said that there was a gun found in the apartment. And that was the source of his, in part of his, credibility finding on the safety valve because if the court was convinced that it was a firearm and the defendant said it wasn't, then. . . No, the court held that it was. . . He didn't believe that somebody would have a firearm in a drawer for 10 years. . . And think it was not operable. That's what the court said. Counsel, help me with the record a little. I thought that the gun was operable. It is. Okay. So his statement that the gun was not operable, that was incorrect. The gun was operable, but there was no, it was unloaded. Is that a fair characterization? Yes, as well as no other ammunition found in the house. And he is legally allowed to own a firearm in Montana. There's nothing prohibiting that. He's not allowed to have the cocaine and the marijuana, but he is allowed to have the firearm. So there's nothing in and of itself about that firearm that is illegal. And his statement was, I had it in the drawer. I didn't check it out. I got it from this guy. I got it 10 years ago. And again, the government doesn't go and say, interview that person or find out if the gun was stolen, we'd all know that because they'd have run it and come back stolen. But they didn't do anything beyond that. But the government doesn't have to do anything beyond that. The court expressed disbelief of the proffered explanation from the defendant. I wouldn't care. Yes, I guess the court did not believe that somebody would have a firearm in the house and not know if it was operable or not. That's what the court really said. Well, the court really said, I think you have to use common sense, that he had that gun for 10 years, and if it wasn't working, as he said, why did he have it? All I can tell you is I have things in my house that are the same thing. But you weren't the one before the judge. I was not. And you hopefully didn't have cocaine in your house. You don't have to answer that. But when he's interviewed at the time the search warrants executed, he does tell them the things. He does minimize. There's no doubt that at that time he does minimize. But then the agents say, everybody minimizes. But he does. And the fact that he says, I've got this gun, I got it from this person, that's a telling sign. He's trying to tell them that. And there's no follow-up whatsoever. Well, there are two ways to look at that. One is that he's trying to minimize, and one is that he's trying to mislead the court. I mean, you could look at that one or two ways. Right. I'm a glass half full kind of guy. I'm thinking that he's trying to be helpful and saying that there is a firearm in my house and it's there. I see that. And, in fact, it doesn't actually matter from whom he acquired it, does it? No, but it is a fact that could have been checked, verified, and that would have either made him more truthful or less truthful to the other information he gave. Well, on the other hand, the defendant could have brought in an affidavit from the person. If he knows who the person is and that person is a friend of his, he probably has more ready access to that person than the government. So that cuts both ways. You're absolutely right. The defendant could have done a whole lot of things. The defendant attorney didn't ask a single question during the trial about this gun. Not a single question. Maybe for good reason. Or maybe that's for your next lawsuit, I guess. Again, I'm a glass half full kind of guy. I see my time is up. Thank you. We'll give you a minute for rebuttal because we used a lot of it with questions. Thank you, Mr. Johnson. Good morning, Your Honors. May it please the Court. I'm Leif Johnson for the United States. I'm going to be very quick on the gun enhancement. Our position is really that we don't even need to consider whether the gun was in the couch in this case. That fact was out there. It was somewhat inconclusive at trial. Our position is Smith admitted to possessing this gun. It's his apartment.  It's in the drawer by the bed. Under the Restrepo case with an ongoing drug operation in the apartment, the 2D1.1 enhancement applies. Now, whether we consider whether it was clearly improbable or not, we don't even think you need to go there. But if you do go there, it was clearly probable that it was involved in protecting the contents of that house. This Court has held along those lines in the past in the Heldberg case and in other cases that a pistol has a reason and it's to protect the contents of an apartment or a drug operation. Does it matter that it was not loaded? It does not, Your Honor. This Court has said in the Heldberg case and the Sixth Circuit and other circuits have held, as the guideline reflects, that the gun doesn't even need to be operable, much less loaded. The threat of violence or increasing the violence to the people who participate in the drug transactions is increased by its mere presence. And that's what the enhancement is designed to do. And it's a low threshold for that reason, and we believe that we clearly met that low threshold. I read a lot of cases. We cited a number of them in our briefs. I haven't run across one, and certainly Smith cites none, that would indicate that it doesn't apply under these circumstances. So, counsel, were you trial counsel? I was not, Your Honor. What is your recollection from the record regarding the reason the Court denied the acceptance of responsibility reduction? On the record, the Court made a very brief statement saying, I don't think the defendant deserves acceptance, Your Honor. And that followed a lengthy discussion amongst counsel as to what was shown at the trial. And one of the things that the prosecutor said in lead-up to that finding was that, you know, the government had to basically cross-examine its own witnesses. They had a real difficult time bringing out the defendant's various co-conspirators and getting the testimony out from them. Having said that, Your Honor, I want to point out one thing, and I know that there's a very brief finding on acceptance. But what I've asked the Court to consider is, number one, the case went to trial, and under the guidelines and under the application note for that guideline, 3E1.1, acceptance of responsibility only applies in very rare instances. And in those instances- When one goes to trial, Your Honor. When one goes to trial. And in those instances, it only applies on the basis of conduct and statements made prior to trial. So if we look at the conduct and statements of Mr. Smith prior to trial, all we have is his statement to law enforcement where he lied, and there's no other way to put it. He said the gun didn't work. It worked. And he was basically trying to protect some of his co-conspirators, including Mr. Flores, which I think is the reason he went to trial in this case. As to the safety valve, I think the issue and the analysis is much the same. I mean, he gave one proffer to the government, and that was at the time of the search. And that proffer was not forthcoming.  So he has no basis upon which to get safety valve eligibility because he made no further proffer. If he had, he might have been eligible. But we believe that those are questions that are basically answered by the statement he made prior to trial, which was not forthcoming. I'm not going to address the sentencing issue unless the Court has any particular questions or if I can help the Court with anything further. I think we have no further questions. Thank you, Counsel. Thank you, Your Honor. Mr. Merchant, if you want it, you have another minute. If the Court has any further questions, I think that both sides have briefed it out fairly well. Again, it's very clear he went to trial simply because his attorney disputed the weight. And the tragedy here is that the safety valve, if he would have done the things that other attorneys would have done, the safety valve would have taken away the mandatory minimum. It would have reduced his guideline range by two levels. The acceptance of responsibility would have reduced his guideline range by three levels if it had been done timely. And the gun enhancement is a two-level, and that would have been in play and something that certainly could have been discussed in the plea agreement. So we're talking about a potentially seven-level change in where the guideline range with no mandatory minimum. That is a problem here. And the fact that he went to trial simply because of that, I think the acceptance of responsibility clearly. And, again, the Court did not say much to that. He just said he didn't get it. Thank you very much. Thank you, Counsel. We appreciate the arguments of both parties. The case just argued is submitted.
judges: Black, Graber, Rawlinson